NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

ANTHONY D., *Appellant*,

*v.*

DEPARTMENT OF CHILD SAFETY, A.D.[1], *Appellees*.

No. 1 CA-JV 22-0034
FILED 7-5-2022

Appeal from the Superior Court in Maricopa County
No. JD39291
The Honorable Christopher Whitten, Judge

**AFFIRMED**

COUNSEL

Maricopa County Public Advocate's Office, Mesa
By Suzanne W. Sanchez
*Counsel for Appellant*

Arizona Attorney General's Office, Tucson
By Jennifer R. Blum
*Counsel for Appellee Department of Child Safety*

---

[1] This caption is amended as reflected and shall be used on all further documents filed in this appeal.

---

**MEMORANDUM DECISION**

Judge D. Steven Williams delivered the decision of the court, in which Presiding Judge Cynthia J. Bailey and Judge Peter B. Swann joined.

---

**W I L L I A M S**, Judge:

¶1        Anthony D. ("Father") appeals the superior court's order terminating his parental rights. For the following reasons, we affirm.

## FACTUAL AND PROCEDURAL HISTORY

¶2        Father and Chelsea S. ("Mother")[2] are the parents of A.D. Father suffers from medical conditions that sometimes require hospitalizations. Mother admitted to using methamphetamine and fentanyl daily during her pregnancy. A.D. was born prematurely and hospitalized for substance withdrawals. When A.D. stabilized, Father had not yet established paternity, and neither parent could meet her basic needs. The Arizona Department of Child Safety ("DCS") took custody of the infant and petitioned for a dependency. The superior court adjudicated A.D. dependent after Father failed to appear for a pre-trial conference without good cause.

¶3        DCS referred Father for substance-abuse testing and a treatment assessment, Family Connections, and a parent-aide with visitation. During the substance-abuse intake, Father denied any drug use, so the provider did not recommend him for treatment. Soon afterwards, Father submitted a hair follicle test that returned positive for methamphetamine and amphetamine. He then admitted to using the drug about five months prior.

¶4        On Father's second referral for substance-abuse treatment, the provider enrolled him in a program that met virtually and required substance-abuse testing twice per week. Father reported he had "no barriers" to attending the program. Nonetheless, Father's referral closed two months later because he did not maintain contact with the provider.

---

[2] Mother's parental rights were also terminated, but she is not a party to this appeal.

**¶5**     Throughout the dependency, Father missed several drug tests and tested positive once for opiates and once for barbiturates, though he later testified that these positive tests resulted from medication administered while he was in the hospital. Father's parent-aide service closed because he failed to maintain contact with the provider. Similarly, Father failed to maintain contact with his Family Connections provider, and that referral closed.

**¶6**     DCS then moved to terminate Father's parental rights on the grounds of substance-abuse and six months' and nine months' time in an out-of-home placement. *See* A.R.S. § 8-533(B)(3), (B)(8)(a), (B)(8)(b). The following month, Father called in only once to determine if he needed to submit to substance-abuse testing. Additionally, DCS provided Father with supervised visits after his parent-aide referral closed, but he missed almost half of them. Father also did not establish stable housing. After a trial, the superior court terminated Father's parental rights on all grounds alleged, and Father appealed.

**¶7**     We have jurisdiction under Article 6, Section 9, of the Arizona Constitution, A.R.S. §§ 8-235(A), 12-120.21(A)(1), -2101(A)(1), and Arizona Rule of Procedure for the Juvenile Court 103(A).

## DISCUSSION

**¶8**     Father challenges the superior court's determinations that DCS made a diligent or reasonable effort to provide him with appropriate reunification services and that termination was in A.D.'s best interests.

**¶9**     A parent's right to custody and control of his own child, while fundamental, is not absolute. *Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 248, ¶¶ 11-12 (2000). Termination of a parental relationship may be warranted where the state proves one statutory ground under A.R.S. § 8-533 by "clear and convincing evidence." *Id.* At 249, ¶ 12. "Clear and convincing" means the grounds for termination are "highly probable or reasonably certain." *Kent K. v. Bobby M.*, 210 Ariz. 279, 284-85, ¶ 25 (2005). The court must also find that termination is in the child's best interests by a preponderance of the evidence. *Id.* At 285, ¶ 29.

**¶10**     This court "will accept the [superior] court's findings of fact unless no reasonable evidence supports those findings, and we will affirm a [termination] order unless it is clearly erroneous." *Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 280, ¶ 4 (App. 2002). We do not reweigh the evidence, but "look only to determine if there is evidence to sustain the

court's ruling." *Mary Lou C. v. Ariz. Dep't of Econ. Sec.*, 207 Ariz. 43, 47, ¶ 8 (App. 2004).

**¶11** Before seeking to terminate a parent's rights on the substance-abuse or out-of-home placement grounds, DCS must make reasonable or diligent efforts to provide appropriate reunification services. *See Jennifer G. v. Ariz. Dep't of Econ. Sec.*, 211 Ariz. 450, 453, ¶ 12 n.3 (App. 2005) (DCS must make "reasonable efforts" under substance-abuse ground.); A.R.S. § 8-533(B)(8) (DCS must make "diligent" efforts under out-of-home placement ground.). DCS satisfies this obligation if it provides the parent with "the time and opportunity to participate in programs designed to help [him] become an effective parent." *Maricopa Cnty. Juv. Action No. JS-501904*, 180 Ariz. 348, 353 (App. 1994). Additionally, DCS must "make reasonable efforts to assist the parent in areas where compliance proves difficult." *Donald W. v. Dep't of Child Safety*, 247 Ariz. 9, 23, ¶ 50 (App. 2019).

**¶12** DCS, however, "is not required to provide every conceivable service or to ensure that a parent participates in each service it offers." *JS-501904*, 180 Ariz. at 353. Nor is it required to undertake rehabilitative measures that are futile, *Mary Ellen C. v. Ariz. Dep't of Econ. Sec.*, 193 Ariz. 185, 192, ¶ 34 (App. 1999), to provide services that have "already been offered," *see Pima Cnty. Severance Action No. S-2397*, 161 Ariz. 574, 577 (App. 1989), or to leave "the window of opportunity for remediation open indefinitely," *Maricopa Cnty. Juv. Action No. JS-501568*, 177 Ariz. 571, 577 (App. 1994).

**¶13** Father argues hospitalizations and the loss of his cell phone were obstacles to his participation in services that DCS was required to help him overcome. As an initial matter, Father had opportunities to challenge the adequacy of his services in superior court, but he failed to do so. And Father did not ask DCS for additional services or different providers. *See Shawanee S. v. Ariz. Dep't of Econ. Sec.*, 234 Ariz. 174, 178, ¶ 16 (App. 2014) (providing a parent must voice his concerns about services to the superior court in a timely manner or waive his right to challenge them on appeal).

**¶14** Even if Father has not waived his challenge, reasonable evidence in the record supports the court's order. At trial, Father testified he was hospitalized frequently, he notified DCS and his service providers each time, and, except for the times he was in the hospital, he consistently participated in services. The court found Father's testimony lacked credibility, noting that although "the records show some hospitalizations, they are far less than Father described."

¶15 The record shows that Father was hospitalized a few times. Those times, however, do not account for Father's minimal participation in services. For example, Father called in and submitted to substance-abuse testing less than half of the times required. Although Father agreed he had no barriers to attending substance-abuse treatment virtually twice a week, he stopped attending or communicating with the provider. Nor did he respond to the provider's phone calls, voicemails, home visit, or outreach letter—all attempts to reengage him in the service. Similarly, Father failed to participate in the parent-aide service, though his provider gave him additional time to engage because of his health issues. In closing the service, the provider noted "[t]here was almost a month that [Father] was not hospitalized[,] and he still did not make the attempt to follow through with any visits or skill sessions." Finally, Father cites the loss of his cell phone, not hospital visits, as the reason he failed to participate in the Family Connections service.

¶16 Father argues DCS should have helped him overcome these obstacles or find alternative providers. The case manager testified, however, that Father failed to regularly notify DCS about his hospitalizations until shortly before the termination trial. Nevertheless, Father does not explain how else DCS could have helped him overcome his health issues, particularly when much of his lack of contact with service providers was during times he was not hospitalized. Moreover, even though Father's medical conditions required regular care, one of his medical providers noted that he was "non-compliant" and failed to attend his follow-up appointments, causing Father to utilize the emergency room. Nor does Father suggest how DCS could have assisted him after the loss of his cell phone or how finding him alternative providers would have helped him engage in services. On this record, Father has shown no error.

¶17 Father also challenges the superior court's finding that termination was in A.D.'s best interests, arguing the court abused its discretion by failing to justify its deviation from the statutory placement preferences set forth in A.R.S. § 8-514. Specifically, Father challenges the court's findings that A.D.

> is not placed with a member of her extended family. Instead, the child is placed with foster parents. In accordance with A.R.S. § 8-538(C), placing the child with a member of the child's extended family is not an available option because the only family suggested lived out of state and [an out-of-state home] study for that placement had not been approved at the time of the hearing.

¶18 Under A.R.S. § 8-538(A), (B)(2), (C), the court is required to recite findings pertaining to the child's placement, particularly when the court finds that placement with the child's extended family is not in the child's best interests. As Father acknowledges, however, the superior court's determination on whether termination is in a child's best interests is "separate from and preliminary to its determination of placement after [termination]." *Antonio M. v. Ariz. Dep't of Econ. Sec.*, 222 Ariz. 369, 370-71, ¶ 2 (App. 2009). That is particularly true here where the out-of-state home study for A.D.'s adult half-sister had not yet been approved, preventing the court from even considering her as a potential placement at the time of the termination trial.

¶19 Nonetheless, Father urges this court to address the findings because they are "inextricably intertwined with the best-interest analysis." We disagree.

¶20 The superior court's order sets forth benefits to termination and detriments to maintaining the parent-child relationship that support the best-interests finding without inextricable reliance on the question of whether A.D. will ultimately be placed with her foster family or her half-sister. *See Maricopa Cnty. Juv. Action No. JS-500274*, 167 Ariz. 1, 5 (1990) ("[A] determination of the child's best interest must include a finding as to how the child would benefit from a [termination] or be harmed by the continuation of the relationship."); *Audra T. v. Ariz. Dep't of Econ. Sec.*, 194 Ariz. 176, 377, ¶ 5 (App. 1998) (During the best interests evaluation, the superior court does not "weigh alternative placement possibilities" but "may [] consider . . . "the immediate availability of an adoptive placement" or "whether an existing placement is meeting the needs of the child.").

¶21 To be sure, Father does not challenge the superior court's findings that termination would benefit A.D. because she "is adoptable," "in good physical condition," "has no behavioral issues," and "is meeting all of her developmental milestones." Father does not challenge the court's additional findings that A.D.'s foster parents are providing her with a loving and nurturing home, that she has thrived in their care, and that they intended to adopt her, providing her with stability and permanency. Nor does he challenge the court's findings that maintaining the parent-child relationship would be detrimental to A.D. because Father "has [not] formed any bond with [A.D.] in the first year of her life, or made much of [an] effort to do so, and [Father] seems [in]capable of honest[ly] addressing [his] drug use." On this record, the court did not err.

## CONCLUSION

**¶22** For the foregoing reasons, we affirm.



AMY M. WOOD • Clerk of the Court
FILED: AA